UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| CDC CORPORATION, | : | CASE NO. 11-79079 |
| | : | |
| Debtor. | : | JUDGE BONAPFEL |

---

**APPLICATION FOR APPROVAL OF EMPLOYMENT OF
FINLEY COLMER AND COMPANY AS CHIEF RESTRUCTURING OFFICER
FOR DEBTOR**

COMES NOW CDC Corporation, debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "Debtor"), pursuant to § 363(b) of Title 11 of the United States Code (the "Bankruptcy Code"), and seeks authority to enter into an Agreement (the "Agreement"), a copy of which is attached hereto as Exhibit "A", under which Finley, Colmer and Company (Finley Colmer) and its designated consultant, Marcus A. Watson ("Mr. Watson"), would manage the affairs of the Debtor as chief restructuring officer for the Debtor.  In support thereof, the Debtor shows the Court as follows:

1. On October 4, 2011 (the "Petition Date), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code.  The Debtor has remained in possession of its assets and has continued to operate its business and manage its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. On October 24, 2011, the Debtor entered into an Agreement with Finley Colmer whereby Finley Colmer agreed to provide to Debtor consulting and advisory services and assist Debtor in its Chapter 11 bankruptcy case.  The Agreement provides that Mr. Watson, as Chief Restructuring Officer, will oversee the operation and management of Debtor's bankruptcy case.

3. Finley Colmer did not receive a retainer for any post-petition work.

4. The Debtor has determined that retention of Finley Colmer, in accordance with the Agreement attached hereto as Exhibit "A", is in the best interests of the Debtor, and its estate and its creditors, and that Finley Colmer is well qualified and able to provide these managerial services to the Debtor in an effective, efficient, and timely manner. Mr. Watson's *curriculum vitae* is attached as Exhibit "B".

5. The Debtor has selected Finley Colmer to provide these required services for the following reasons:

    a. Finley Colmer is experienced in rendering the services required by the Debtor. Finley Colmer is experienced in management consulting and specializes in providing crisis and turnaround management consulting to distressed companies such as the Debtor. Finley Colmer has extensive experience providing turnaround management services to companies both in Chapter 11 as well as outside of bankruptcy. This extensive background and experience in working with companies in Chapter 11 cases and requisite skills and abilities will enable Finley Colmer to provide all of the managerial services the Debtor requires.

    b. As set forth in the Declaration of Marcus A. Watson (the "Declaration") offered in support of this Application and attached hereto as Exhibit "C", Marcus Watson, in particular, has experience in Chapter 11 cases and is well qualified to provide the services set forth in the Agreement to Debtor.

6. During the pendency of this bankruptcy case, Finley Colmer, and Mr. Watson in particular, will provide managerial services and oversight as outlined in the Agreement, thereby assisting the Debtor's efforts at maximizing value for the benefit of the Debtor's estate. The

Debtor believes that Finley Colmer's managerial services will not duplicate any services that professionals are providing to the Debtor in this bankruptcy case.

7. The fee schedule is set forth in the Agreement (the "Fee Structure"). As stated in the Agreement, the Debtor proposed to pay Finley Colmer $11,000 per week for the services, With the exception of out-of-pocket travel related costs, Finley Colmer does not charge for copying, long distance telephone, and other overhead related fees. Finley Colmer does not charge for travel time.

8. The Debtor seeks approval of the Fee Structure consistent with the terms of the Agreement; provided, however, Finley Colmer would be paid on a weekly basis but its fees and expenses would still remain subject to Court review for reasonableness pursuant to a final fee application.

9. The Fee Structure appropriately reflects the nature and scope of the services to be provided by Finley Colmer and Finley Colmer's substantial experience with respect to management services. The Fee Structure is consistent with fees charged by similarly situated restructuring managers for similar services and has been approved by other Bankruptcy Courts around the country.

10. As noted above, Finley Colmer will be paid on a weekly basis during the term of the engagement, but will seek approval of such compensation and reimbursement of reasonable, necessary expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, pursuant to a final fee application.

11. The Debtor reserves the right to amend this Application to disclose other relevant facts not now known but which may be revealed to Finley Colmer during the administration of

this case, and to disclose any corrections or changed circumstances pertaining to the facts disclosed herein.

12. All future connections or relationships with parties in interest, including the Debtor, Debtor's attorneys and accountants, creditor, creditors' attorneys and accounts, and other professionals, will be disclosed timely to the Court, creditors committee (if any), and the United States Trustee.

**WHEREFORE**, the Debtor prays for authority to retain and employ Finley Colmer to provide to the Debtor the services set forth in the Agreement, in accordance with the terms and conditions in the Agreement, and for such other and further relief as may be just and proper.

This 26th day of October, 2011.

                                                Respectfully submitted,

                                                LAMBERTH, CIFELLI, STOKES,
                                                  ELLIS & NASON, P.A.
                                                Attorneys for the Debtor

                                                By:  /s/ Gregory D. Ellis_____
                                                Gregory D. Ellis
                                                Georgia Bar No. 245310

3343 Peachtree Road, N.E.
East Tower, Suite 550
Atlanta, Georgia 30326-1022
(404) 262-7373
(404) 262-9911 (facsimile)

**EXHIBIT "A" FOLLOWS**

362584.doc

# AGREEMENT

THIS AGREEMENT (hereinafter "Agreement") is made as of October 24, 2011 by and between Finley, Colmer and Company, 5565 Glenridge Connector Suite 200 Atlanta, Georgia 30342 (hereinafter "Consultant") and CDC Corporation, 2002 Summit Boulevard, Suite 200, Atlanta, GA 30319 (hereinafter "Client").

**WHEREAS,** Client's Board of Directors authorized the filing of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"); and

**WHEREAS,** on October 4, 2011, Client filed of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") Case No. 11-79097 (the "Bankruptcy Case"); and

**WHEREAS,** Client's Board of Directors has appointed a Special Committee comprised of three of its Directors, currently Mr. Fred Wang, Mr. John Clough, and Mr. Peter Yip (hereinafter the "Special Committee"), which has been empowered to make all board-level decisions, to provide all essential board-level approvals, and to undertake any and all necessary and appropriate board-level actions regarding the Bankruptcy Case on behalf of the Client; and

**WHEREAS,** Client's Special Committee has voted to appoint a Chief Restructuring Officer ("CRO") to oversee the operation and management of the Bankruptcy Case maximize its value for creditors; and

**WHEREAS,** Consultant has certain skills and abilities that may be useful to Client from time to time; and

**WHEREAS,** Consultant is an independent contractor willing to provide services to Client for the period contemplated in this Agreement; and

**WHEREAS,** Consultant has advised Client of its willingness, ability and desire to provide advisory services to Client on a regular but non-exclusive basis; and

**WHEREAS,** Client desires to retain the services of Consultant as set forth herein in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing recitals and the terms, conditions and covenants contained herein, it is hereby agreed as follows:

## ARTICLE I
## APPOINTMENT OF CONSULTANT

Client hereby engages Consultant, subject to approval by the Bankruptcy Court, as an independent contractor for the sole purpose of performing the Services as described in Article III of this Agreement and Consultant accepts such appointment and agrees to perform the Services.

## ARTICLE II
## TERM OF AGREEMENT

This Agreement will commence at the beginning of business on October 24, 2011 or at such later time as is approved by the Bankruptcy Court (the "Commencement Date") and end at the close of business January 31, 2012 ("Ending Date"). Upon the mutual agreement of the parties, the term of this Agreement may be extended by execution of a written extension mutually agreeable to Client and Consultant. Client may terminate this Agreement upon fifteen (15) days written notice to Consultant and approval by the Bankruptcy Court and Consultant may terminate this Agreement upon fifteen (15) days written notice to Client and approval by the Bankruptcy Court.

## ARTICLE III
## SCOPE OF DUTIES

Consultant, through its designee Marcus A. Watson, will oversee and direct the administration of Debtor's bankruptcy estate, including the insolvency, reorganization, and restructuring processes and, if appropriate, the Debtor's efforts to sell various divisions and/or assets of the Debtor, all consistent within the directives of the Board of Directors, pursuant to the Bankruptcy Code and orders of the Bankruptcy Court:

i. Consultant will assist the Client to maximize recovery of its assets for the benefit of estate;

ii. Consultant, through its designee Marcus A. Watson, will represent the Client as an Officer of Client as required during the bankruptcy process;

iii. Consultant shall report to the Special Committee of the Board of Directors of Client;

iv. Consultant shall advise the Special Committee of the Board of Directors of Client regarding their duties, responsibilities and tasks during the bankruptcy process;

v. Consultant's designee as CRO shall assume such other duties as are usually and customarily performed by a Chief Executive Officer, Chief Operating Officer, or Chief Financial Officer, as the case may be, of a business of similar kind and size;

vi. Consultant, through its designee Marcus A. Watson, shall be duly elected to the office of Chief Restructuring Officer in accordance with the by-laws of Client, and the by-laws or other proper resolutions of Client, and shall authorize Consultant to perform the duties set

forth in this Agreement.

## ARTICLE IV
## COVERAGE UNDER DIRECTORS AND OFFICERS INSURANCE POLICY

The Consultant and the CRO shall be as thoroughly covered as the most well covered officer and director by such directors' and officers' insurance policy, or other general liability policy or policies, as Client shall have in effect from time to time. It is a specific requirement of this engagement that such directors' and officers' liability insurance be in place at all times during the course of this engagement.

Notwithstanding the foregoing, Consultant shall have:

i. No duty or authority to enter into any contract or to pursue a course of action which requires the approval of the Special Committee of the Board of Directors of Client without having first obtained such approval;

ii. No duty, no responsibility, and no authority with respect to regulatory compliance duties, including without limitation: (a) the management, handling, transport, disposal or remediation of hazardous waste or hazardous substances; (b) compliance with applicable federal, state or local statutes, ordinances, regulations orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (c) filings with federal and state securities authorities and filings and payments to federal, state, and local taxing authorities, and;

iii. In acting on behalf of Client, no duty to nor any authority to enter into any agreement with Consultant (other than as necessary to carry out the terms of this Agreement) nor to extend, renew, modify, amend or terminate this Agreement.

## ARTICLE V
## CONSULTANT'S COMPENSATION

For all services rendered by the Consultant under this Agreement, Client shall pay the Consultant as follows:

i. Client shall pay to Consultant a fee of Eleven Thousand ($11,000.00) dollars per week throughout the term of this Agreement;

ii. Client agrees to reimburse Consultant for travel related expenses at cost. All travel expenses incurred must be paid in advance; Client shall make credit card payment in advance to all airline carriers, car rental firms and hotels. Travel expenses shall be based on business class tickets, full-size vehicles, and accommodations provided by, or equivalent to those provided by Residence Inn's or the like, including a multi-room hotel. Consultant agrees to use his best efforts to keep such expenses at the lowest practical level; and

iii. Consultant shall maintain and submit detailed invoices with time entries setting forth its activities in accordance with the Bankruptcy Court procedures.

## ARTICLE VI
## CONSULTANT'S DESIGNEE

Marcus A. Watson ("Watson") will be the individual designated by Consultant to act as the Chief Restructuring Officer, in performing this Agreement. Until such time as Client receives written notification to the contrary from Consultant, Watson has full authority to carry out this Agreement on behalf of Consultant. Other representative of Consultant shall be considered representatives of the Chief Restructuring Officer and shall have the authority to act as directed by the CRO. Consultant and Watson shall perform all services as independent contractors and not as employees of Client, and neither Consultant nor Watson shall receive any remuneration from Client, including participation in disability, retirement, pension, profit sharing or other benefit or deferred compensation plans of Client, other than as set forth herein.

## ARTICLE VII
## INDEMNIFICATION AND HOLD HARMLESS

Client agrees to indemnify and hold harmless Consultant and all of its officers, directors and employees ("Indemnities") against any and all costs, losses, liabilities, expenses (including reasonable attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with third party claims against any Indemnitee which result (i) from any act or omission constituting negligence, willful misconduct or breach of fiduciary duty by an officer, director or employee of Client in connection with this Agreement, or (ii) in connection with the Services rendered by the Consultant hereunder.

## ARTICLE VIII
## REPRESENTATIONS, WARRANTIES AND COVENANTS

Each of the parties hereto warrants and represents that, subject to approval by the Bankruptcy Court, it has the authority, corporate and otherwise, to enter into this Agreement and perform in accordance with the terms hereof. Client acknowledges and agrees that Consultant shall be providing services hereunder based upon information provided to Consultant by Client. Client warrants and represents said information is true and correct. Client agrees to indemnify Consultant for any breach of the foregoing warranty or representation. Consultant agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning Client is and shall remain the exclusive property of Client, and no such information shall be divulged by Consultant to third parties, other than in the course of the performance of services to be rendered hereunder, unless such information becomes public knowledge or is required by order of a court.

# ARTICLE IX
# MISCELLANEOUS PROVISIONS

*Notices.* All notices under this Agreement shall be in writing and shall be deemed duly given when delivered, if personally delivered, or three (3) days after the date mailed if sent by registered or certified mail, return receipt requested and postage prepaid, and addressed to the parties at the following addresses:

If to Client:              At the address above provided
If to Consultant:          At the address above provided

unless a party receives written notice of any change.

*Assignment; Binding Effect.* Neither the Client nor the Consultant may assign or transfer this Agreement or any rights or benefits under this Agreement to any person or entity without the prior written approval of the other party.

*Remedies Not Exclusive.* The rights and remedies provided in this Agreement are cumulative and not exclusive and are in addition to any other rights and remedies the parties may have at law or otherwise.

*Waiver.* Neither party's waiver of the other's breach of any term, covenant or condition contained in this Agreement shall be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition in this Agreement.

*Force Majeure.* Client and Consultant shall be excused for the period of any delay in the performance of any obligations under this Agreement when prevented from performing such obligations by cause or causes beyond their reasonable control, including, without limitation, civil commotion, war, invasion, rebellion, hostilities, military or usurped power, sabotage, pestilence, riots, fire or other casualty or acts of God.

*Headings.* The headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any article or section of this Agreement.

*Survival.* The covenants contained in or liabilities accrued under this Agreement which, by their terms, require their performance after the expiration or termination of this Agreement shall be enforceable notwithstanding the expiration or other termination of this Agreement.

*Governing Law.* This Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Georgia. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the jurisdiction of the Bankruptcy Court. In the event the Bankruptcy Court declines jurisdiction, the parties agree that jurisdiction is proper in the state or federal courts of the State of Georgia.

*Severability.* If any provision of this Agreement shall be determined to be invalid or unenforceable, the remaining provisions of this Agreement shall not be affected thereby, and every provision of this Agreement shall remain in full force and effect and enforceable to the fullest extent permitted by law.

*Time of the Essence.* Time is of the essence in the performance of the duties under this Agreement.

*Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*Entire Agreement; Modification.* This Agreement, and the materials incorporated herein by reference, constitutes the entire agreement between the parties. There are no promises or other agreements, oral or written, express or implied, between the parties other than as set forth in this Agreement. No change or modification of, or waiver under, this Agreement shall be valid unless it is in writing and signed by duly authorized representatives of Client and Consultant.

**Remainder of Page Intentionally Left Blank**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

CDC CORPORATION

By: _____

Its: _Litigation Counsel_

FINLEY, COLMER & COMPANY

By: _____

Its: _Vice-President_

CDC LEGAL DEPARTMENT
APPROVED AS TO FORM
By: _____

CDC Corp CRO Agreement

**EXHIBIT "B" FOLLOWS**

362584.doc

# CURRICULUM VITAE

## Marcus A. Watson

Marc Watson is a 1972 graduate of The University of Arkansas, where he earned his degree in Business Administration with a concentration in Accounting. He holds a Masters in Business Administration with Accounting and Finance concentrations from the University of Arkansas, granted in 1973. Marc is a Certified Public Accountant and a member of the American Institute of Certified Public Accountants, the Petroleum Accountants Society, and the Georgia Society of Certified Public Accountants.

Marc Watson specializes in providing consulting services to companies who are actively engaged in mergers and acquisitions and financially troubled companies engaged in financial restructuring or bankruptcy proceedings.

Upon graduation from the University of Arkansas, Marc Watson joined Ernst & Young, participating in numerous audit engagements for a variety of public and private companies. In 1979, Marc Watson accepted the position of chief administrative officer for Amarex, Inc., a publicly held company engaged in oil and gas exploration. During his tenure with Amarex, he managed all phases of financial administration including planning, treasury, and accounting functions. In 1982, Marc Watson was appointed chief financial officer of Amarex as part of an effort to financially restructure the Company and its subsidiaries. Marc Watson remained with Amarex until reorganization proceedings were completed in 1986.

Marc Watson rejoined Ernst & Young's consulting staff in 1987 and became a partner in the Restructuring and Reorganization Group in 1990. He was primarily involved in providing reorganization services to both creditors and debtors in reorganization situations. These services included the preparation and negotiation of debtor reorganization plans for operating companies engaged in retail, oil and gas, manufacturing and transportation industries. Marc Watson has also provided services to the Bankruptcy Court in cases where Ernst & Young was appointed as an examiner or engaged to assist Trustees in their efforts to recover assets of bankrupt estates. He has also assisted real estate companies and lending institutions in their efforts to renegotiate non-performing real estate loans.

Marc Watson joined Finley, Colmer and Company in 1994 to provide not only consulting services to operating companies but also crisis management services in situations where companies face financial disaster. A list of some of the workout transactions in which Marc Watson has provided consulting services for various parties of interest are as follows:

American Carriers, Inc. - Bank
Countrywide Transportation, Inc. - Bank
Crowfoot & Barrett, Inc. - Bank
Greyhound Lines, Inc. - Bank
Hunt Trust Estates - Bank
Southland Corporation - Bank
Brendle's Stores, Inc. - Committee

C.R. Anthony - Committee
Leeds Building Products - Committee
Lomas Financial Corp. - Debtor
LTV - Debtor
MCorp - Debtor
Southmark, Inc. - Debtor
ETS Pay Phones, Inc. - Debtor
Peachtree Natural Gas, LLC – Debtor

    A list of workout transactions where Marc has provided management and reorganization services are as follows:

Wellington Leisure Products, Inc. - CEO/CRO
Meadowcraft, Inc. - President/CRO
Rite Industries, Inc. - CFO/CRO
MManTec, Inc. - Trustee
Advanced Rehab, Inc. - CRO
Kershaw Manufacturing - CRO
Crescent Airways, Inc. - CRO
Lummus Gin Corporation - CRO
Shepherd Construction Co. - CRO
National Bus Sales & Leasing - CRO
DMK Entertainment - CRO
Pike Nursery Holding, LLC - Trustee

**EXHIBIT "C" FOLLOWS**

362584.doc

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| CDC CORPORATION, | : | CASE NO. 11-79079 |
| | : | |
| Debtor. | : | JUDGE BONAPFEL |

---

**DECLARATION OF MARCUS A. WATSON IN SUPPORT OF DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF FINLEY COLMER AND COMPANY AS CHIEF RESTRUCTURING OFFICER FOR DEBTOR**

I, Marcus A. Watson, declare under penalty of perjury as follows:

1. I am an officer in the firm of Finley, Colmer and Company ("Finley Colmer"), and in that capacity I have personal knowledge of, and authority to speak on behalf of Finley Colmer with respect to the matters set out herein. This Declaration is offered in support of the Application of the Debtor in the above-styled case to employ Finley Colmer as the Debtor's Chief Restructuring Officer (the "Application"), and the matters set out herein are true and correct to the best of my knowledge, information and belief.

2. Except as stated below, to the best of my knowledge Finley Colmer has no connection with the Debtor, its attorneys or any accountant employed by the Debtor

3. In connection with the proposed retention of Finley Colmer by the Debtor in this Chapter 11 case, I have reviewed the pleadings to determine any connections that Finley Colmer may have with the Debtor, any creditors or parties in interest.

4. Based upon that review, which included the Debtor's list of twenty (20) largest unsecured creditors, Finley Colmer has not represented, currently does not represent creditors of the Debtor.

362585

5. Except as otherwise set forth herein, and to the best of my knowledge as of the date hereof, neither the undersigned nor Finley Colmer has any connection with the Debtor, any creditors or other parties in interest in this case, its respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee, other than unrelated matters in which the undersigned, the firm and other attorneys or accountants may be involved.

6. Finley Colmer has no agreement with any other entity to share with such entity any compensation received by Finley Colmer in connection with this Chapter 11 case, except among the principals of Finley Colmer, as set forth below.

7. The application proposes that Finley Colmer be retained under §363(b) of the Bankruptcy Code. Nonetheless, Finley Colmer is a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code. Therefore, on multiple counts, Finley Colmer is eligible to serve as chief restructuring officer of the Debtor.

8. Finley Colmer will continue its review and will update this Declaration and the disclosures herein and will make such supplemental disclosures as circumstances may require.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

This 26 day of October, 2011.

_____
MARCUS A. WATSON

*Penalty for making a false statement of concealing property: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§152 and 3571.*

2

362585

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing document upon all those parties listed below by depositing same in the U. S. mail in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the U.S. Trustee
362 Richard Russell Building
75 Spring Street, SW
Atlanta, GA  30303

Marcus A. Watson
5565 Glenridge Connector
Suite 200
Atlanta, Georgia 30342

This 26th day of October, 2011.

/s/ Gregory D. Ellis
Gregory D. Ellis
Georgia Bar No. 245310

COS - GDE.doc