UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 11-79079-pwb |
| | : | |
| CDC CORPORATION, | : | |
| | : | CHAPTER 11 |
| DEBTOR. | : | |

EVOLUTION'S OPPOSITION TO DEBTOR'S APPLICATION
FOR APPROVAL OF EMPLOYMENT OF FINLEY COLMER
AND COMPANY AS CHIEF RESTRUCTURING OFFICER

COMES NOW Evolution CDC SPV Ltd., Evolution Master Fund Ltd., Segregated Portfolio M, and E1 Fund Ltd. (collectively, "Evolution"), by and through their undersigned attorneys, to file their Opposition to the Debtor CDC Corporation's ("Debtor's") Application For Approval of Employment of Finley Colmer and Company As Chief Restructuring Officer for Debtor (the "Application"). In support of their Opposition, Evolution respectfully shows the Court the following:

1. The Debtor is a holding company that has no operations and maintains a single office with a single computer in an office building in Atlanta. It has no customers and no remaining employees. On October 4, 2011 (the day that the Debtor filed its bankruptcy petition), a joint special committee of the Boards of the Debtor and its largest subsidiary, CDC Software (the "Joint Investigatory Committee"), <u>unanimously</u> determined that the Debtor's CEO and controlling board member, Peter Yip, had committed perjury based upon sworn testimony that Mr. Yip provided to a New York court. Three of the Debtor's six directors have recently resigned, the Debtor's CFO recently resigned (citing his concerns about the matters being investigated by the special committee), and now, its Vice President and General Counsel has resigned, effective today, despite being ordered on October 19 to appear for a 2004 examination by November 4.

- 1 -

1277767_3

2. Based upon the foregoing, there is no need for the proposed CRO's operational expertise, no need to oversee employees or to perform financial modeling, and no need to prepare projections or to deal with customers. In short, this case does not bring to the table any of the traditional management skills sought out by a distressed debtor with a management vacuum, despite the Debtor's assertions that it needs a CRO to "provide managerial services and oversight." Application, ¶ 6. The reason for the Debtor's instant application, as is demonstrated herein, is that the Debtor is trying to provide cover for the ethically-challenged Mr. Yip, who is supposedly "on leave" but still controls the Board and the Debtor in this bankruptcy – a fact which the proposed CRO's appointment will not ameliorate.

3. Indeed, the Debtor's engagement agreement with the CRO dated as of October 24, 2011 (the "CRO Engagement Agreement") makes it abundantly clear that the CRO has no real authority to act on behalf of the Debtor but instead must answer to a three-person bankruptcy special committee (the "Bankruptcy Special Committee") of the Debtor's board headed by Peter Yip. This is remarkable, once again, because the Joint Investigatory Committee of the boards of the Debtor and its primary subsidiary, CDC Software, unanimously determined on October 4, 2011 – just three weeks prior – that Mr. Yip (a major shareholder, CEO and director who is purportedly now "on leave") had "provided <u>false testimony under oath</u> in a legal proceeding [in New York in which Evolution was the plaintiff] and <u>recommended that Mr. Yip be removed</u> as Chief Executive Officer of [CDC Software] as well as [the Debtor]." See CDC Software's October 20, 2011 6-K, p. 2 (<u>Exhibit A</u> hereto) (emphasis added). In fact, CDC Software's Board – based upon the recommendation of the Joint Investigatory Committee and concerns that Mr. Yip had exercised managerial direction while on administrative leave previously – unanimously voted to terminate Mr. Yip's contract as CEO. Id., p. 3.

4. In addition, Mr. Yip, along with the other two people comprising the Debtor's newly-formed Bankruptcy Special Committee to whom the CRO will answer – John Clough and Fred Wang – were the same board members at the helm of the Debtor when the New York court ruled on July 13, 2011 that the Debtor: "(i) willfully disregarded its discovery obligations; (ii) submitted false testimony; and (iii) advanced factually and legally unsupportable defenses and claims intended to frustrate Evolution's enforcement of the notes at issue in this matter." See id., 6-K (p. 2); see also the New York court's ruling (Exhibit B hereto) (stating that the Debtor, among other things, submitted "patently false testimony").

5. Moreover, three directors of the Debtor including two independent directors (Simon Wong, Raymond Ch'ien and Thomas Britt) and its only two employees with personal knowledge about the Debtor's actions during the last year (its CFO, John Stone, and its Vice President and General Counsel, Ed Swift) have all hastily resigned from the Debtor in the past six weeks. See the Debtor's 6-Ks of September 13 & 16 and October 12, 2011 (Exhibits C, D and E hereto). The CFO, John Stone, left citing concerns about the matters being investigated by the joint special committee (Exhibit D), and Mr. Swift, who was ordered by the Court on October 19 as an employee of the Debtor to appear for 2004 examination on or before November 4 (Order, Dkt. # 22), has now purportedly resigned from the Debtor effective October 31 and has, according to Debtor's counsel, promptly moved to Orlando, Florida, and will not be appearing for examination.

6. Understandably, Evolution does not trust that the Debtor will conduct itself in bankruptcy in an ethically responsible manner or plan for an exit that is in best interest of its shareholders and creditors, and the CRO Engagement Agreement merely confirms that the Debtor's motion for a CRO is little more than window dressing intended to deflect attention from Mr. Yip and his remaining board, which cannot even rid itself of Mr. Yip despite the fact that a

New York judge and the Joint Investigatory Committee of the Debtor's and CDC Software's own boards determined that Mr. Yip submitted false testimony under oath.

7. In relevant part, the CRO Engagement Agreement provides that the Bankruptcy Special Committee is empowered "to make all board-level decisions, <u>to provide all essential board-level approvals</u> and to undertake any and all necessary and appropriate board-level actions regarding the Bankruptcy Case . . .." <u>See</u> <u>Exhibit F</u> hereto, p. 1 (emphasis added). Article III further provides that the CRO "will oversee and direct the administration of the Debtor's bankruptcy estate . . . <u>all consistent within the directions of the Board of Directors</u>" and that "iii. Consultant <u>shall report to the [Bankruptcy] Special Committee of the Board</u>." <u>Id.</u> (emphasis added). Importantly, Article IV provides that: "Notwithstanding the foregoing, [CRO] shall have: (i) <u>no authority to enter into any contract or pursue any course of action</u> which requires the approval of the [Bankruptcy] Special Committee without having first obtained such approval." <u>Id.</u> (emphasis added). Taken in combination, it is clear that the CRO has no real authority to act on its own, but instead will be bound as the puppet of Mr. Yip and his Bankruptcy Special Committee.

8. Finally, Mr. Yip's recent October 12, 2011 letter to the board and his purported 12 to 18 month "medical leave" (<u>Exhibit A</u>, p. 3) is utterly belied by: (i) the subsequent CRO Engagement Agreement, which demonstrates that Mr. Yip will be an active participant in this bankruptcy (<u>Exhibit F</u>, p. 1, "Special Committee" definition); and (ii) Mr. Yip's own statements to others that "medical leave" is just a ruse to mollify shareholders and the U.S. courts. Indeed, as was disclosed in the October 12, 2011 6-K: "Mr. Yip had exercised managerial direction while on administrative leave from the Company" despite having been placed on leave from his position as CEO of the Debtor and of CDC Software on July 15, 2011

following the New York court's finding that he had submitted false sworn testimony and that it was considering sanctioning him for his perjury.  See Exhibit A, p. 3.

**WHEREFORE**, Evolution respectfully submits that the proposed CRO and CRO Engagement Agreement are ill-conceived and will not best serve the Debtor's estate, and accordingly, Evolution respectfully requests that the Court deny the Debtor's Application or, in the alternative, hold decision upon it in abeyance until after the pending expedited 2004 examinations and discovery are completed so that the Court can determine whether or not a CRO is appropriate after additional disclosure by the Debtor.

Respectfully submitted, this 31st day of October, 2011.

**PARKER, HUDSON, RAINER & DOBBS LLP**
Co-counsel for Evolution CDC SPV Ltd., Evolution Master Fund Ltd., Segregated Portfolio M, and E1 Fund Ltd.

By:    /s/ C. Edward Dobbs
    C. Edward Dobbs
      Georgia Bar No. 223450
    James S. Rankin, Jr.
      Georgia Bar No. 594620

1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, Georgia 30303
(404) 523-5300

- and -

**SATTERLEE STEPHENS BURKE & BURKE LLP**
Co-Counsel for Evolution SPV Ltd., Evolution Master Fund Ltd., Segregated Portfolio M, and E1 Fund Ltd.

By:    /s/ Aaron M. Zeisler
    Timothy T. Brock (admitted *pro hac vice*)
    Aaron M. Zeisler (admitted *pro hac vice*)
    Abigail Snow (AS-2960)

230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

- 5 -

1277767_3

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day served a copy of the within and foregoing **EVOLUTION'S OPPOSITION TO DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF FINLEY COLMER AND COMPANY AS CHIEF RESTRUCTURING OFFICER** upon each of the following persons via electronic mail as follows:

    James C. Cifelli, Esq.
    William D. Matthews, Esq.
    Lamberth, Cifelli, Stokes & Stout PA
    3343 Peachtree Road, NE
    Atlanta, GA 30326
    jcifelli@lcsenlaw.com
    wdm@lcsenlaw.com

    James H. Morawetz, Esq.
    Office of the U.S. Trustee
    362 Richard Russell Bldg.
    75 Spring Street, SW
    Atlanta, GA 30303
    Jim.h.morawetz@usdoj.gov

    Thomas J. Fleming, Esq.
    Olshan Grundman Frome Rosenzweig & Wolosky LLP
    Park Avenue Tower
    65 East 55th Street
    New York, New York 10022
    tfleming@olshanlaw.com

    John F. Isbell, Esq.
    Garrett A. Nail, Esq.
    Thompson Hine LLP
    3560 Lenox Road
    Two Alliance Center, Suite 1600
    Atlanta, Georgia 30326
    john.isbell@thompsonhine.com
    garrett.nail@thompsonhine.com

    This 31st day of October, 2011.

                                  /s/ James S. Rankin, Jr.
                                    James S. Rankin, Jr.
                                  Georgia Bar No. 594620

1277767_3