UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| CDC CORPORATION, | : | CASE NO. 11-79079 |
| | : | |
|    Debtor. | : | JUDGE BONAPFEL |

---

| | | |
|---|---|---|
| CDC LIQUIDATION TRUST, | : | |
| | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | Adversary Proceeding No. |
| | : | |
| RAJAN VAZ, LIGHTSTONE-OSTI, L.L.C., LIGHTSTONE-DBPI, L.L.C., and LIGHTSONE-SGI, L.L.C. | : | |
| | : | |
|    Defendants. | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW CDC Liquidation Trust and states its Complaint for Declaratory Judgment, respectfully showing the Court as follows:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction to adjudicate this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is properly before the Court pursuant to 28 U.S.C. § 157, and is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O). This action may also be heard within the Court's non-core jurisdiction, as a matter "otherwise related to a case under Title 11," under 28 U.S.C. § 157(c)(1).

2.    Venue properly lies in this Court pursuant to 28 U.S.C. § 1409.

3. In addition, all parties to this action have consented to jurisdiction and venue in this Court under paragraphs 9.6(b) of the respective asset purchase agreements which are the subject matter hereof.

4. By Order entered September 6, 2012 (the "Confirmation Order"; Docket No. 551), the Court confirmed the Second Amended Joint Plan of Reorganization for CDC Corporation dated August 29, 2012, as modified by the Confirmation Order (the "Plan"), which was proposed by CDC Corporation and the Official Committee of Equity Security Holders of CDC Corporation (the "Equity Committee").

5. Paragraph TT of the Confirmation Order provides: "Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law[.]"

6. The Plan became effective on December 19, 2012 (the "Effective Date"). Under the Plan, the CDC Liquidation Trust was established on the Effective Date, and Marcus Watson became the Liquidation Trustee.

7. Under the Plan, all of the Debtor's assets and all property of the estate, including estate causes of action, were transferred to the CDC Liquidation Trust. *See* Plan § 7.10. The Liquidation Trustee has the authority to commence, prosecute, and litigate causes of action. *See* Plan § 7.11.

8. Defendant Rajan Vaz ("Vaz") is a natural person residing at 29 Rosenbrook Drive, Lincoln Park, Morris County, New Jersey 07035.

431527

9. Defendants Lightstone-SGI, L.L.C., Lightstone-DBPI, L.L.C., and Lightstone-OSTI, L.L.C. (the "Lightstone entities") are Delaware limited liability companies with places of business at 29 Rosenbrook Drive, Lincoln Park, New Jersey 07035.

10. Vaz and the Lightstone entities (collectively, the "Defendants") may be served under Rule 7004 of the Federal Rules of Bankruptcy Procedure or under Rule 4 of the Federal Rules of Civil Procedure.

11. Defendants are subject to the jurisdiction of this Court.

## BACKGROUND FACTS REGARDING CDC'S BANKRUPTCY AND CERTAIN ASSET SALES

12. CDC Corporation (the "Debtor" or "CDC") filed its Chapter 11 petition on October 4, 2011 (the "Petition Date").

13. On May 4, 2012, Debtor filed a Notice with Respect to Sale of Non-Debtor Assets Consisting of Debtor's Indirect Interest in OST International Corporation ("OSTI") (Docket No. 375). Attached to the notice is an Asset Purchase Agreement (the "OSTI APA") for the sale of OSTI to 3RC-OST L.L.C.

14. On May 4, 2012, Debtor filed a Notice with Respect to Sale of Non-Debtor Assets Consisting of Debtor's Indirect Interest in DB Professionals, Inc. ("DBPI") (Docket No. 377). Attached to the notice is an Asset Purchase Agreement (the "DB Professionals APA") for the sale of DBPI to 3RC-DBPI L.L.C.

15. On July 17, 2012, Debtor filed a Notice with Respect to Sale of Non-Debtor Assets Owned by Software Galeria, Inc. ("SGI") and CDC Services, Inc. (the "SGI Notice": Docket No. 492). Attached to the SGI Notice is an Asset Purchase Agreement (the "SGI APA") for the sale of SGI and CDC Services, Inc. assets to an entity formed by Vaz, Lightstone-SGI, L.L.C.

16. The SGI Notice disclosed that the proposed sales of DBPI and of OSTI had failed to close and that the asset purchase agreements related thereto were terminated. The SGI Notice further disclosed that entities formed by Vaz had agreed to purchase those assets under substantially the same terms and conditions as set forth in the DBPI APA and in the OSTI APA.

17. Specifically, Lightstone-OSTI, L.L.C. agreed to purchase the assets of OSTI for a purchase price of $663,000, and Lightstone-DBPI L.L.C. agreed to purchase the assets of DBPI for a purchase price of $937,000.

18. The SGI APA, the OSTI APA, and the DBPI APA (collectively, the "Asset Purchase Agreements") all contain substantially similar provisions for each seller to provide indemnity to each buyer and for the establishment of a Contingent Liability Escrow.

19. The parties to the SGI APA agreed that, from the Purchase Price, the sum of $150,000 would be held by Debtor's counsel in escrow to satisfy any indemnification obligations owed from the seller as set forth in Article VII of the SGI APA.

20. The parties to the DBPI APA agreed that the sum of $150,000 would be held by Debtor's counsel in escrow to satisfy any indemnification obligations owed from the seller as set forth in Article VII of the DBPI APA.

21. The parties to the OSTI APA agreed that the sum of $100,000 would be held by Debtor's counsel in escrow to satisfy any indemnification obligations owed from the seller as set forth in Article VII of the OSTI APA.

22. Article 7.3 in each of the Asset Purchase Agreements is identical and provides for each seller to indemnify and hold each buyer harmless from obligations relating to, *inter alia*, any breach of warranty or covenant made by each seller.

23. Article 7.4 in each of the Asset Purchase Agreements is nearly identical and provides for limits on each seller's indemnification obligations to each buyer.

24. By letter dated November 7, 2012, counsel for the Lightstone entities notified counsel for the Debtor that the Lightstone entities asserted indemnity claims against the amounts escrowed under each of the Asset Purchase Agreements. A true and correct copy of the November 7, 2012 letter is attached hereto as Exhibit "A" and incorporated herein by reference.

25. By letter dated March 10, 2014, counsel for the Lightstone entities again notified counsel for the Debtor that the Lightstone entities asserted indemnity claims against the amounts escrowed under each of the Asset Purchase Agreements. A true and correct copy of the March 10, 2014 letter is attached hereto as Exhibit "B" and incorporated herein by reference.

26. Further, after SGI's directors other than Vaz scheduled a meeting to consider whether to file a complaint against Vaz for his violation of duties as a director of SGI, counsel for Vaz threatened to sue CDC-related directors (including Marcus Watson) who had been appointed as directors of SGI. A true and correct copy of the April 4, 2013 letter from counsel for Vaz is attached hereto as Exhibit "C" and incorporated herein by reference.

27. The pendency of claims against SGI and/or its directors impedes the wind up of SGI's affairs, upstreaming of net assets under corporate law, and final liquidation of the CDC Liquidation Trust. Indemnification obligations asserted by the Lightstone entities, and any indemnification obligations SGI may owe threatened directors, must be resolved before SGI can be liquidated.

### COUNT I – DECLARATORY JUDGMENT THAT VAZ AND HIS LIGHTSTONE ENTITIES HAVE NO CLAIMS AGAINST THE AMOUNTS HELD IN ESCROW PURSUANT TO THE ASSET PURCHASE AGREEMENTS

28. The allegations contained in paragraphs 1 through 27 are incorporated herein as if fully restated in their entirety.

29. The amounts held in escrow under the Asset Purchase Agreements cannot be "upstreamed" to the CDC Liquidation Trust (the "Plaintiff") for distribution to beneficial interest holders until the asserted indemnity claims are resolved.

30. By asserting indemnity claims, the Defendants have created an actual, justiciable controversy between Plaintiff and Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. §2201. Therefore, Plaintiff requests a declaration from this Court that Defendants have no valid indemnity claims against the sellers under the Asset Purchase Agreements, or, if any valid indemnity claims exist, a declaration from this Court setting forth the amount of the valid claims.

### COUNT II – DECLARATORY JUDGMENT THAT VAZ HAS NO CLAIMS AGAINST CDC-RELATED DIRECTORS APPOINTED AS DIRECTORS OF SGI

31. The allegations contained in paragraphs 1 through 27 are incorporated herein as if fully restated in their entirety.

32. Among other things, SGI may owe threatened directors indemnification against the claims asserted against them.

33. By claiming that he has causes of action against CDC-related directors who had been appointed to the Board of Directors of SGI, Vaz has created an actual, justiciable controversy between Plaintiff and Vaz, which may be heard and determined by this Court pursuant to 28 U.S.C. §2201. Therefore, Plaintiff requests a declaration from this Court that Vaz

has no valid claims or causes of action against the CDC-related directors appointed as directors of SGI.

WHEREFORE Plaintiff requests that this Court enter an Order:

(i)     declaring that Defendants have no valid indemnity claims against the amounts held in escrow pursuant to the Asset Purchase Agreements or, if any valid indemnity claims exist, a declaration from this Court setting forth the amount of the valid claims;

(ii)    declaring that Vaz has no valid claims or causes of action against the CDC-related directors appointed as directors of SGI; and

(iii)   granting such further and other relief as the Court deems proper.

This 23rd day of October, 2014.

                    Respectfully Submitted,

                    LAMBERTH, CIFELLI, STOKES,
                      ELLIS & NASON, P.A.
                    Attorneys for CDC Liquidation Trust

                    By: */s/ James C. Cifelli*
                        James C. Cifelli
                        Georgia Bar No. 125750
                        jcifelli@lcsenlaw.com
                        Gregory D. Ellis
                        Georgia Bar No. 245310
                        GEllis@lcsenlaw.com

3343 Peachtree Road NE, Suite 550    William D. Matthews
Atlanta, GA 30326                             Georgia Bar No. 470865
(404) 262-7373                                WDM@lcsenlaw.com
(404) 262-9911 (facsimile)

431527

Exhibit "A" follows

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

Attorneys at Law

1311 MAMARONECK AVENUE, WHITE PLAINS, NY 10605
TEL: (914)517-5000  |  FAX: (914)517-5055

November 7, 2012

**By Email and Federal Express**
Gregory D. Ellis
Lamberth, Cifelli, Stokes, Ellis & Nason PA
Atlanta Financial Center
East Tower, Suite 550
3343 Peachtree Road NE
Atlanta, GA 30326

                            Re:    Software Galeria, Inc. to Lightstone SGI, LLC;
                                    OST International, Inc. to Lightstone-OSTI,
                                    LLC; and
                                    DB Professionals, Inc. to Lightstone-DBPI, LLC
                                    Our File No.: 16515-BTL

Dear Mr. Ellis:

      Please allow this to serve as written notice of indemnity claims that the Lightstone entities are making against the amounts that are escrowed pursuant to the Contingency Fund Escrow Agreements.

1.      Payroll Tax Claims

      The July 31, 2012 Amendment to the Asset Purchase Agreement between Software Galeria, Inc./CDC Business Solutions, Inc. and Lightstone-SGI, LLC provides that the Buyer (Lightstone SGI, LLC) escrow $110,000 to be used to satisfy the IRS Payroll Tax Claims. That escrowed amount is being held by Lamberth, Cifelli, Stokes, Ellis & Nason, P.A, as Escrow Agent. Mr. Vaz is still in the process of resolving the tax liability and is hopeful that he will be able to resolve the matter well within the amount that has been escrowed. Mr. Vaz has submitted an Offer in Compromise which is being processed by the IRS, and expects to have word from the IRS within a few weeks. The $110,000 that the Buyer has escrowed should therefore remain in escrow.

2.      Immigration Matters Related to OST International, Inc.

      There are immigration matters related to the employees of OST International, Inc. that potentially impact the indemnity obligations set forth in the Asset Purchase Agreement.

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

OST International, Inc. warranted in the Asset Purchase Agreement that it, as Seller, was in compliance with all applicable immigration or state or federal department of labor laws and regulations in connection with existing Labor Condition Applications, H-1B filings and Green Card filings. Mr. Vaz has retained immigration counsel to review the matter, and he has concluded that there are two potential problems stemming from OST International, Inc.'s processing of immigration papers for its employees.

First, it appears that the H-1B filings on behalf of approximately 13 employees of OST International, Inc. had different Federal Employee Identification Numbers than were listed on the I-129 Petitions filed with United States Citizenship and Immigration Services. This presents the possibility that the H-1B filings will be deemed invalid because the employer that filed the I-129 Petitions is not the same employer that made the H-1B filings. If the employee is deemed to be out of status or his or her H-1B deemed invalid because of the discrepancy between the Federal Employee Identification Number on the I-129 and the H-1B, the employer will be considered to have hired an unauthorized person, which exposes the employer to claims and litigation. Immigration counsel has estimated the potential exposure for attorneys' fees defending against these types of claims alone to be approximately $5,000 per employee/per claim, which does not include any damages that could be assessed.

Second, it appears that OST International, Inc. may not have created or maintained a PERM Audit file for five years from the date that PERM applications were filed. (A PERM labor certification application is filed by the employer with the Department of Labor in order to see if there are qualified and willing United States workers interested in the foreign applicants' positions.). If this is the case, there is a risk that the employer will be required to prepare, assemble and file the required papers if any inquiries are made by the United States Department of Labor certifying officer, or if the PERM applications are audited, which necessarily will lead to costs for attorneys' fees and other expenses. Immigration counsel has estimated that approximately $5,000 in attorneys' fees per PERM audit file would be required to address any issues stemming from the non-availability or deficiency of a PERM audit file.

3.  Claims By Employees

Certain employees, including Madhu Ankarath (OST International, Inc.) and Alfred D'Souza (Software Galeria, Inc.) have made claims regarding compensation issues. You are in receipt of the Proofs of Interest that they have filed with the Bankruptcy Court. We believe that their claims are wholly without merit. Nonetheless, to the extent that they are making claims for monies earned or claimed to be due prior to the Closing, then the Seller's are responsible to indemnify the Buyers against such claims. The Sellers' are required to indemnify the Buyers against "any claim, action or cause of action or other liability arising out of or resulting from or relating to the Excluded Liabilities or Seller's ownership of the Purchased Assets prior to closing."

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

(Section 7.3). Furthermore, Section 7.10 of the Asset Purchase Agreements require the Sellers to notice the Acquired Personnel and seek an acknowledgment from them that they have been paid all compensation to which they were entitled through closing and that no money is due from Seller through such date. We also construe the remainder of Section 7.10 to require that any claims by employees/Acquired Personnel to be paid out of the Contingency Liability Escrow Funds

This Notice is being provided to you pursuant to Section 7.5 of the Asset Purchase Agreements. By this letter, we are advising you that the Buyer Indemnitees have suffered or incurred or believe that they will suffer or incur damages for which they are entitled to indemnification under Article 7 of the Asset Purchase Agreements. Pursuant to Section 2 of the Contingency Fund Escrow Agreements, the Escrow Agent shall hold all amounts that are currently escrowed until the earlier of (i) the written agreement of the parties or (ii) an order of a court of competent jurisdiction directing the disbursement of said funds.

Buyers reserve all rights.

Thank you for your attention to these matters.

Very truly yours,

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

*Peter N. Freiberg*

Peter N. Freiberg
Direct No.: 914-517-5013
pfreiberg@mdpcelaw.com

PNF/bls
cc:   Arthur J. Steinberg
00254341.DOCX

Exhibit "B" follows



# Denlea & Carton LLP

One North Broadway
Suite 509
White Plains, NY 10601
Tel 914.920.7400
Fax 914.761.1900
www.denleacarton.com

March 10, 2014

Gregory D. Ellis
Lamberth, Cifelli, Stokes, Ellis & Nason PA
Atlanta Financial Center
East Tower, Suite 550
3343 Peachtree Road NE
Atlanta, Georgia  30326

Re: Software Galeria, Inc. to Lightstone-SGI, LLC;
OST International, Inc. to Lightstone-OSTI, LLC; and
DB Professionals, Inc. to Lightstone-DBPI, LLC

Dear Mr. Ellis:

As you may recall, I represent Lightstone-SGI, LLC, Lightstone-OSTI, LLC, and Lightstone-DBPI, LLC (collectively, "Lightstone"), purchasers of the assets of Software Galeria, Inc., OST International, Inc., and DB Professionals, Inc., respectively. This correspondence is intended to supplement Lightstone's earlier demand for indemnity pursuant to the respective Asset Purchase Agreements.

Pursuant to the Asset Purchase Agreements and related Contingency Fund Escrow Agreements, your law firm is acting as Escrow Agent for certain Indemnity Funds ($50,000 related to Software Galeria, $100,000 related to OST International, and $150,000 related to DB Professionals, Inc.). Lightstone has previously placed you on notice of its indemnity claims against the funds being held in escrow, and this letter will amplify that previous demand.

## INDEMNITIES

I.     Accrued Wages and Benefits.

In the Asset Purchase Agreements, the Sellers made certain representations and warranties that have turned out not to be true. Specifically, the Sellers represented that they were "not delinquent in payments to any of their employees for any wages, salaries, commissions, bonuses or other direct compensation for any services performed for Seller as of the date hereof or any amounts required to be reimbursed to such employees;" and were "in compliance in all material respects with all applicable laws and regulations relating to labor, employment, fair employment practices, terms and conditions of employment, and wages and hours." The Sellers also represented and warranted that, to their knowledge, "there are no back wages due, underpaid or unpaid fees, underpaid or unpaid bonuses, unreimbursed expenses, underpaid or unpaid employee benefits, underpayment of wages, or any other

unsatisfied obligation of the Seller to any of the Acquired Personnel or to any state or federal governmental entity or authority against Seller in connection with any of the Acquired Personnel (or any former personnel of Seller or any other staff or "temp" personnel of Seller) for any period prior to the Closing Date..."

As it turns out, there were a number of employees who had not been paid or properly compensated for services rendered prior to Lightstone's acquisition of the assets, as follows:

A.     Nineteen (19) employees of Sellers had accrued vacation pay prior to closing for which they were not compensated by Sellers. The total amount of pre-acquisition vacation pay that these employees had accrued, but for which they were not compensated by Sellers, is approximately $48,000.00.

B.     Additionally, sixteen (16) employees of Sellers were not paid by Sellers certain salaries, commissions or other vacation benefits that they had accrued prior to closing. The total amount of these unpaid wages, commissions and benefits is approximately $64,000.00. This amount includes pre-acquisition wages and benefits that were due to certain employees of DB Professionals for their work at the Bonneville Power Administration, which led to a complaint by the United States Department of Labor due to the fact that the Bonneville Power Administration is a federal agency governed by the McNamara-O'Hara Service Contract Act.

The Asset Purchase Agreement specifically provides that sellers shall indemnify and hold Lightstone harmless from any and all obligations, costs, fines, claims, actions, injuries, demands, suits, judgments, proceedings, etc. arising out of or otherwise relating to "any inaccuracy or breach of any representation or warranty made by Seller in this Agreement." Sellers are therefore obligated to indemnify Lightstone against the pre-acquisition employee wages and benefits that had accrued prior to closing but which Sellers failed to satisfy, because Sellers made inaccurate representations and warranties.

In addition, we note that there apparently are outstanding tax liabilities that Sellers owe to various states for various types of taxes accrued in the several years prior to closing. Sellers should ensure that theses tax liabilities are satisfied.

II.     Immigration Matters

In the Asset Purchase Agreements, Sellers also represented and warranted that they were in compliance with all applicable immigration or state or federal department of labor laws and regulations in connection with existing Labor Condition Applications, H1B filings, and Green Card filings. However, this warranty appears to have been inaccurate.

First, the H1B filings of behalf of approximately 13 employees of OST International had different federal employee identification numbers then were listed on the I-129 petitions filed with the United States Citizenship and Immigration Services. The H1B filings are invalid because the employer that filed the I-129 petitions is not the same employer that is listed in the H1B filings, due to the discrepancy

between the federal employee identification numbers. This means that the employer will be considered to have hired an unauthorized person, exposing the employer to claims and litigation, which could amount to an excess of $5,000 per employee/per claim.

Second, OST International may not have created and maintained a PERM audit file for five years from the date that PERM applications were filed. This presents the risk that OST international, as employer, will be required to prepare, assemble and file the required papers if any inquiries are made by the United States Department of Labor, or if the PERM applications are audited, necessarily leading to costs for attorney's fees and other expenses that immigration counsel has estimated to be approximate $5,000 per audit file.

Lightstone is entitled to indemnification from Sellers because Sellers breached the representations and warranties that they were in compliance with all immigration laws and regulations.

III.     Seema Bamzai

Ms. Bamzai was an employee of OST international. Seller failed to disclose to Lightstone that Seller had released Ms. Bamzai from a restrictive covenant in Seller's favor, as a result of which Ms. Bamzai was able to solicit approximately twenty four (24) of OST International's contractors, leading to a dramatic decrease in OST International's revenues. Lightstone believes that Seller and its agents deliberately failed to disclose to Lightstone that Ms. Bamzai had been released from her restrictive covenant, as a result of which Lightstone has suffered damages.

### DEMAND

Lightstone hereby demands that the funds being held by your law firm as Escrow Agent be immediately released to Lightstone in satisfaction of Sellers' indemnity obligations.

This letter is sent without waiver of any of our client's rights and remedies, each of which is expressly reserved.

Very truly yours,

DENLEA & CARTON LLP

*[signature]*

Peter N. Freiberg

PNF/ht

Exhibit "C" follows

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Arthur J. Steinberg
Partner
Direct Dial: +1 212 556 2158
asteinberg@kslaw.com

April 4, 2013

**BY EMAIL AND UPS**

Joseph D. Stutz
CDC Corporation
2002 Summit Boulevard
Atlanta, GA 30319

Re:   Software Galeria, Inc. ("SGI")

Dear Mr. Stutz:

We are counsel for Rajan Vaz and are writing in response to your email message scheduling a meeting of the Board of Directors of SGI ("SGI") for April 5, 2013 at 10:00 a.m.

Mr. Vaz will not be attending the meeting, and therefore the meeting cannot proceed as scheduled. The governing Shareholders Agreement, which CDC Business Solutions, Inc. has recently recognized as controlling the management of SGI requires a quorum of three to be present at the beginning of and throughout each meeting. Since there **will not be a quorum present at the scheduled meeting, any acts taken by the Directors in attendance will be without force and effect.**

In addition to the foregoing, there is absolutely no basis for the proposed lawsuit, and we view it as a malicious prosecution. Simply put, it is a bad faith attempt by the people controlling CDC Corporatiion ("CDC") to gain some perceived tactical advantage over Mr. Vaz by, among other things, causing him to spend legal fees on a frivolous detour. If this action goes forward, Mr. Vaz will consider taking action against the individuals behind this bad faith litigation.

As you also know, the allegations set forth in the proposed complaint substantially overlap the allegations that Mr. Watson already has levied in the Objection to Mr. Vaz's Proof of Claim filed in the Bankruptcy Court on April 1, 2013. Mr. Watson's counsel in the Bankruptcy Court action already has corresponded with me to propose a discovery plan related to the factual allegations stated in the Objection, making it quite clear that these alleged claims will be litigated in the Bankruptcy Court. Having Mr. Vaz defend the same case in two courts, based on the same meritless allegations raised, in effect, by the same person, is abusive. If the lawsuit is commenced in New Jersey state court, we will seek appropriate relief to undo the wasteful action contemplated. For this reason, and the reasons stated below, you and your attorneys should

Joseph D. Stutz
April 4, 2013
Page 2

consider this letter to be your notice that Rule 11 sanctions may be brought against all responsible plaintiff parties if this law suit is brought.

    We will not at this time comment on the allegation that Mr. Vaz breached a fiduciary duty other than to state that your understanding of the situation is entirely incorrect--and you know it. We had a hearing in the Bankruptcy Court on many of the issues raised in the proposed complaint. You testified that CDC did not care what it got from these smaller non-Debtor subsidiary sales, other than the opportunity to get them off their books. The SGI sale was one of 3 transactions of this type, which were sold to Mr. Vaz's company at the same time. The 3 transactions to Mr. Vaz paid CDC more than $1 million in excess of the sale price for these businesses which CDC otherwise would have closed on. In addition, when originally soliciting bids for these businesses, CDC purposefully ignored Mr. Vaz's interest in these businesses and blatantly claimed that maximizing the purchase price was not their primary goal in closing these sales.

    Moreover, you stated on a number of occasions that the reason why CDC ultimately dealt with Mr. Vaz was primarily to get a voluntary reduction of the Claims reserve for his claim, from $29 million to $10 million. You testified, after you and Mr. Watson blatantly violated Bankruptcy Court dictated procedures as to how how non-Debtor subsidiaries should be sold, that CDC, Mr. Watson, and the Equity Committee (represented by Troutman Sanders) did not care if that particular sale produced another $500,000. That type of incremental money was not material to the *CDC* estate, and expediency in the sale was more important. As you know, the SGI sale was for $150,000. It also wrapped up many of the issues (i.e., the Indian subsidiary claims) that you improperly resurrected in the proposed complaint.

    On a personal level, you assured me that if we ended the dispute over the sale of the non-Debtor subsidiary and not have another hearing, you would make sure that the dispute over Mr. Vaz's claim would be handled in a straight forward and professional manner. That does not seem like your game plan now. Mr. Vaz and I took you at your word and ended the dispute. You and Mr. Watson should live by your commitments.

    In any event, rest assured that if CDC or its affiliates allege that there was something improper about the transaction in which SGI sold assets to Lightstone-SGI, LLC, then Mr. Vaz will seek to void or alter the July 17, 2012 Stipulation and Agreement which limits Mr. Vaz's claim to $10,000,000. In such event, CDC will need to reserve for this $29 million claim. You don't get to take your piece of a settlement and try and undo the other half.

    Furthermore, when Lightstone-SGI, LLC purchased the assets of SGI, the clear intent was that SGI would essentially be left a "shell" which owned nothing. The financials given to Mr. Vaz reflected that situation. Many of the claims which you are asserting in the proposed complaint occurred almost 3 years ago. Lightstone-SGI, LLC acquired all of SGI's business contracts, employees, contractors, unbilled revenue, accounts receivable, furniture, equipment, client lists, logos, trademarks, books, bank accounts, etc. Mr. Vaz understood that he was acquiring everything from SGI including any claims that could be considered as an asset of the

Joseph D. Stutz
April 4, 2013
Page 3

corporation. The words I used in the negotiations, was a final divorce on this aspect of the dispute. Both Mr. Vaz and I were therefore shocked to learn that the other Directors (which are the same people he negotiated the transaction with), are considering having SGI sue him. The counsel in the proposed complaint is the former bankruptcy counsel to the CDC Equity Committee. They clearly knew what was contemplated by the sale transaction. For the corporation and its Directors to consent to sell all of the assets of the company, and then months later claim that the company still "owns" claims against Mr. Vaz is further demonstration of the bad faith intent that accompanies the proposed meeting and CDC's actions.

You will recall that Mr. Vaz recently consented to the appointment of Mr. Watson as a member of the Board of Directors of SGI after Derik Reynecke resigned. Mr. Vaz did so in good faith, based upon your representations that the substitution was needed so you could take care of the annual report. Mr. Vaz had no reason to suspect that, just a month or two later, his consent would be used against him by what appears to be the other two directors wanting to authorize a lawsuit against him. It seems likely that Mr. Reynecke resigned since he wanted nothing to do with this type of action. Assuming your intent was to deceive Mr. Vaz into giving his consent, which appears likely, you should consider that consent by Mr. Vaz to be formally rescinded.

Finally, Mr. Vaz demands that he be provided with all information related to the Directors and Officers liability insurance, or any other insurance, available to him as a Member of the SGI Board of Directors, or as an officer or employee of SGI. He intends to make a claim against the Directors and Officers liability insurance coverage for his defense costs and seek indemnity for the claims that SGI or CDC may make against him in the proposed lawsuit or in any other forum. Please provide me with that insurance coverage information as soon as possible, which insurance coverage information should include all policies issued to CDC to cover its subsidiaries and related corporate entities such as SGI. Please also consider this letter as formal notification that Mr. Vaz is demanding that the applicable insurance carrier(s) defend and indemnify him against these proposed claims, and that he demands that you immediately provide written notification of this claim to the applicable carrier(s).

CDC fired Mr. Vaz (at SGI) for no reason, and then let the SGI business decline precipitously as it battled Evolution. The CDC directors are liable to Mr. Vaz as shareholder of SGI for their neglect and breaches of fiduciary duty. If these matters are not satisfactorily resolved, you can be sure that these claims will be asserted against the CDC directors of SGI. Demand is hereby made for the corporate minutes of all of SGI Board meetings since January 1, 2010. It is clear that things were going on behind the scenes and it is now time to lift the curtain.

Joseph D. Stutz
April 4, 2013
Page 4

    CDC never paid for its alleged 51% share of SGI. That is part of Mr. Vaz's claim against CDC. Your contemplated law suit is a transparent attempt to extricate CDC from the deception committed against Mr. Vaz years ago. Your actions, and those of you "aiders and abetters" will not withstand the light of day.

    Please be guided accordingly.

Very truly yours,

Arthur J. Steinberg

AJS:lab


cc:    Brett D. Goodman, Esq.
       James Cifelli, Esq.
       Marcus A. Watson
       Donald Novajosky
       Harris Winsberg, Esq. (email only)
       Rajan Vaz (email only)
       Peter Freiberg, Esq. (email only)
       Rajan Pillai (email only)